STATE OF CONNECTICUT *v.* WILLIAM WALKER
(12481)

DUPONT, C. J., and FOTI and LANDAU, Js.

Argued April 25—decision released July 8, 1994

*Dennis F. O'Toole,* assistant public defender, for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *William Bumpus,* former assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of assault of a correction officer pursuant to General Statutes § 53a-167c (a) (1),[1] for which he was sentenced to eight

---

[1] General Statutes § 53a-167c (a) provides in pertinent part: "A person is guilty of assault of a[n] . . . employee of the department of correction when, with intent to prevent a reasonably identifiable . . . employee of the department of correction from performing his duty, and while such . . . employee is acting in the performance of his duties, (1) he causes physical injury to such . . . employee . . . ."

years imprisonment. The defendant claims that he was punished twice for the same offense and, therefore, that his sentence should be vacated on the grounds of the double jeopardy provisions of the state and federal constitutions. We affirm the judgment of the trial court.

On June 5, 1992, the defendant was being detained prior to trial at the Hartford community correctional center when he struck correction officer Christopher Novak in the head and jaw with his fist. The defendant was placed immediately in administrative detention in an isolation area pending disciplinary proceedings. Novak issued a disciplinary report and the defendant received a copy. The defendant was presented before the correction facility disciplinary board and, after declining the assistance of a correction staff employee as advocate, admitted the misconduct and received fifteen days punitive segregation and thirty days confinement to quarters. He has completed the sanctions imposed.

An officer of the Connecticut state police was assigned to investigate the incident. Subsequent to the disciplinary hearing, an arrest warrant was issued for the defendant for the charge of assault in the second degree pursuant to General Statutes § 53a-60. Ultimately, the defendant was charged by information with assault of an employee of the department of correction in violation of General Statutes § 53a-167c (a) (1). The defendant moved to dismiss the information pursuant to Practice Book § 815 (6) asserting that prosecution was barred by the principles of double jeopardy as contained in the Connecticut constitution and the fifth and fourteenth amendments to the United States constitution. The trial court denied the motion. The case proceeded to a jury trial and the defendant was convicted as charged.

The sole issue on appeal is whether the sanctions imposed on the defendant by the department of correction constituted punishment for the purposes of double jeopardy and thereby barred the subsequent criminal prosecution.

The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." "This clause prohibits not only multiple trials for the same offense but also multiple punishments for the same offense. *Brown* v. *Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)." *State* v. *John*, 210 Conn. 652, 693, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989). This constitutional provision applies to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 787, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *State* v. *Woodson*, 227 Conn. 1, 7, 629 A.2d 386 (1993). Although the Connecticut constitution does not include a specific double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution has been held to encompass protection against double jeopardy. *Kohlfuss* v. *Warden*, 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962); see also *State* v. *Anderson*, 211 Conn. 18, 25 n.8, 557 A.2d 917 (1989).

We must first resolve the threshold issue of whether multiple punishments were imposed. In denying the motion to dismiss, the trial court found, "[t]he 'punishment' which the defendant received as a result of this incident, by the department of correction, was an administrative matter, not punitive, was intended to enforce the security rules of the institution, to maintain order, and to maintain control of the institution. It was not a determination of innocence or guilt beyond a reasonable doubt of the charges, [that] the defend-

ant has had to face here . . . which is a violation of § 53a-167c (1), interfering with a correctional officer's performance of his duties, and causing physical injury to a correctional officer." The trial court concluded that the administrative sanction imposed did not constitute punishment for the purposes of the double jeopardy prohibition against multiple punishment. We agree.

The defendant argues that the administrative sanction imposed by the department of correction constituted punishment for the purposes of double jeopardy because the title of the sanction imposed was "punitive segregation," and because the segregation arguably served the punitive function of deterrence.

Civil sanctions are not exempt from double jeopardy analysis. A civil sanction constitutes punishment when the sanction as applied to the individual case serves the goals of punishment, i.e., retribution and deterrence." *United States* v. *Halper,* 490 U.S. 435, 448, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989).[2] "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment . . . ." Id.[3] In addition, when the severity of the sanction is

[2] In *Halper,* the United States Supreme Court held that the statutory penalty authorized under the federal civil false claims act constituted double jeopardy as applied to the defendant who was previously convicted, fined and sentenced to prison on charges arising out of the same transactions. While we note that *Halper* was initially limited to a "rare case," the Supreme Court has recently extended that holding in *Dept. of Revenue of Montana* v. *Kurth Ranch,* U.S. , 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994). There, the court found that a Montana drug tax was "a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." Id., 1948.

[3] In *Brazo* v. *Real Estate Commission,* 177 Conn. 515, 526, 418 A.2d 883 (1979), our Supreme Court held that the suspension of the defendant's real estate license for two thirty day periods, one pursuant to a commission regulation and the other under the General Statutes, violated the double jeop-

so disproportionate to the harm caused, it may constitute punishment. Id., 449. Labels do not control in a double jeopardy inquiry. Id., 448. Thus, the fact that the sanction was labeled punitive does not make it so; rather we must make a particularized assessment of what purpose the penalty may fairly be said to serve.[4] Id., 448.

" 'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' *Price* v. *Johnston,* 334 U.S. 266, 285, 68 S. Ct. 1049, 92 L. Ed. 1356 (1948)." *Roque* v. *Warden,* 181 Conn. 85, 93, 434 A.2d 348 (1980). The institutional consideration of internal security in the correction facilities themselves is essential to all other correction goals. Id., 97–98. General Statutes § 18-31a specifically mandates that the commissioner of correction "shall establish rules for the regulation and government of . . . community correctional centers . . . and for the discipline and employment of inmates." Because the realities of running a correctional institution are complex and difficult, the courts give wide-ranging deference to the decisions of prison administrators in considering what is necessary and proper to preserve order and discipline. *Buckley* v. *Warden,* 181 Conn. 286, 291, 435 A.2d 348 (1980).

In this case, the trial court found, and we agree, that the sanctions imposed on the defendant served the pur-

___

ardy prohibition against multiple punishments. We note, however, in that case, that the court explicitly found the regulation at issue to be *penal in nature.*

[4] The defendant also attempts to make a distinction between administrative detention and punitive segregation. In this case, administrative detention was imposed pending the resolution of the disciplinary proceedings. The defendant received credit for time spent in administrative detention toward the completion of the punitive segregation. From the perspective of the inmate, which is the crucial viewpoint in double jeopardy analysis; see *United States* v. *Halper,* supra, 490 U.S. 447 and n.7; there is no difference between these sanctions.

pose of maintaining institutional order and security. The sanctions were imposed pursuant to the policy and procedures of the Hartford community correctional center.[5] The trial court heard the testimony of Lieutenant Eric Stewart, the disciplinary coordinator at the Hartford correction center. He testified that punitive segregation involves confinement of the inmate to a cell away from the general prison population twenty-three hours a day and the loss of other privileges such as telephone, visitation, recreation, and commissary visits. Confinement to quarters is a lesser sanction and generally some of the inmate's privileges will be restored. Stewart further testified that penalties imposed by correction department disciplinary proceedings cannot result in any additional jail time, only the loss of accrued good time credits.

The sanction of fifteen days of punitive segregation and thirty days of confinement to quarters was not disproportionate to the serious offense of assault on a correction employee. The defendant was never exposed to an extension of a sentence. Further, there was testimony that if the defendant, who was being detained pending trial, had made bond, he would have been released without having to serve what remained of the sanctions. It was not unreasonable to remove the defendant from the general prison population because his violent behavior could be detrimental to maintaining control throughout the correction facility. Correction authorities must be allowed to take appropriate action to ensure the safety of inmates and correction

---

[5] Section 1 of those polices and procedures provides: "[T]he Hartford Community Correctional Center . . . shall provide for the orderly conduct of inmates by establishing rules of conduct and procedures to address misconduct. . . . Sanctions shall be proportionate to the seriousness of the offense and the disciplinary record of the offender and *shall serve to manage the offender's behavior and to demonstrate the consequences of misconduct.*" (Emphasis added.)

employees; they must be permitted promptly to sanction misconduct within the institution so as to preserve order and discipline. "Ensuring security and order at the institution is a permissible nonpunitive objective . . . ." *Bell* v. *Wolfish,* 441 U.S. 520, 561, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

Further, our Supreme Court has previously characterized such actions by the department of correction as nonpunitive and, accordingly, declined to address a defendant's double jeopardy claim. In *State* v. *Mead,* 130 Conn. 106, 112, 32 A.2d 273 (1943), the court stated: "To the defendant's claim of double jeopardy because of solitary confinement upon his return after escape, a sufficient answer is that this was not imposed as punishment for the crime of escape from the prison but as a measure of prison discipline."[6] We similarly conclude that the sanction imposed on the defendant by the department of correction in this case did not constitute punishment for the purposes of double jeopardy.

The defendant also argues that because the transfer of a prisoner to punitive segregation implicates an inmate's due process rights; *Roque* v. *Warden,* supra, 181 Conn. 94; deprivation of that right necessarily amounts to punishment. The disciplinary proceeding and the prehearing notice, investigation, and opportunity for advice, are all intended to protect the interests of the defendant. The hearing serves to determine whether the rules of the institution have been broken and to ensure that sanctions are imposed impartially and in proportion to the misconduct. " 'The fact that harm is inflicted by governmental authority does not make it punishment. . . . [A]ll discomforting action may be deemed punishment because it deprives of what otherwise would be enjoyed.' . . ." *Bell* v. *Wolfish,*

---

[6] See also *United States* v. *Newby,* 11 F.3d 1143, 1144–46 (3d Cir. 1993).

supra, 441 U.S. 538 n.19. As the defendant notes in his brief, "in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, *not the underlying nature of the proceeding* giving rise to the sanction, that must be evaluated." (Emphasis added.) *United States* v. *Halper,* supra, 490 U.S. 447 n.7. We have already determined that the sanction imposed served a remedial and not a punitive purpose.

Because we find on the threshold issue that multiple punishments have not been applied, we need go no further. "When the issue is purely one of multiple punishments, the right to be free from vexatious proceedings simply is not present." *State* v. *Lonergan,* 16 Conn. App. 358, 377, 548 A.2d 718 (1988), aff'd, 213 Conn. 74, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2568, 110 L. Ed. 2d 267 (1990).[7]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] The state argues that a disciplinary hearing does not constitute criminal prosecution for the purposes of double jeopardy. In an analogous situation, a probation revocation proceeding, our Supreme Court found that the exposure to criminal prosecutions for the same offense after conviction or acquittal that is prohibited by the double jeopardy clause "is absent from proceedings that are not essentially criminal. . . . A proceeding is criminal for double jeopardy purposes, if it imposes a sanction *intended as punishment.* . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Smith,* 207 Conn. 152, 176, 540 A.2d 679 (1988).