UNITED STATES of America,
Plaintiff–Appellee,

v.

Reggie Neon BROWN, Defendant–Appellant.

No. 94–30271.

United States Court of Appeals,
Ninth Circuit.

Submitted May 5, 1995 *.

Decided June 20, 1995.

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

David T. McDonald, Cross & McDonald, Portland, OR, for defendant-appellant.

Baron C. Sheldahl, Asst. U.S. Atty., Portland, OR, for plaintiff-appellee.

Before BROWNING, REAVLEY,** and NORRIS, Circuit Judges.

PER CURIAM:

### I.

Reggie Brown participated in a prison riot while serving a 15–year sentence for armed robbery. Brown was charged in a prison disciplinary proceeding with assault on a corrections officer, riot, attempted murder, and destruction of government property. Brown was found to have committed the assault, but the remaining allegations were dismissed. Prison authorities disallowed forty-one days of good time credit Brown could have earned on the anniversary of his imprisonment and ordered Brown transferred to a higher security institution. Brown was subsequently indicted for assaulting a federal officer and destruction of government property based on the same conduct for which he had been disciplined by prison authorities. Brown moved to dismiss the indictment on double jeopardy grounds. The district court denied the motion, and Brown appeals.

### II.

We have held that the bar against double jeopardy does not preclude criminal prosecution for conduct for which prison authorities have already imposed administrative discipline. *See United States v. Apker,* 419 F.2d 388, 388 (9th Cir.1969) (holding that segregated confinement after escape attempt did not preclude criminal prosecution for same conduct). Other circuits have held the same.

** The Honorable Thomas M. Reavley, Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

*See Garrity v. Fiedler*, 41 F.3d 1150, 1152 (7th Cir.1994) (citing cases from other circuits).

Brown argues these holdings have been overruled implicitly by several recent decisions redefining "punishment" for purposes of the bar against multiple punishments for the same offense. He points in particular to *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), in which the Supreme Court held that a civil monetary penalty sufficiently disproportionate to the harm caused to the government was punishment for double jeopardy purposes. *See id.* at 449–50, 109 S.Ct. at 1902–03. Specifically, *Halper* held that a civil penalty is "punishment" if it "cannot fairly be said solely to serve a remedial purpose, but rather can *only* be explained as also serving either retributive or deterrent purposes." 490 U.S. at 448, 109 S.Ct. at 1901 (emphasis added); *see also Austin v. United States*, — U.S. —, —, — n. 12, 113 S.Ct. 2801, 2806, 2810 n. 12, 125 L.Ed.2d 488 (1993) (citing *Halper* for the proposition that a sanction is "punishment" if "it can *only* be explained as serving in part to punish" (emphasis added)); *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1219 (9th Cir.1994) ("[A] sanction which is designed even in part to deter or punish will constitute punishment, regardless of whether it also has a remedial purpose.").

We note at the outset that *Halper* did not involve a prison disciplinary proceeding. This distinction is critical. As *Halper* noted, applying the double jeopardy bar to a typical civil sanction does not "prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding." *Halper*, 490 U.S. at 450, 109 S.Ct. at 1902. By contrast, as a practical matter applying the prohibition against double jeopardy to prison disciplinary proceedings would effectively compel the government to choose between remedial and punitive goals. Seeking disciplinary sanctions and criminal penalties in a single proceeding is not feasible: "[t]he difficulties and delay that a criminal prosecution entails would leave the prisoners who violated the prison rules without a prompt resolution of charges and hinder prison administration and discipline." *United States v. Newby*, 11 F.3d 1143, 1146 (3rd Cir.1993); *see also Garrity*, 41 F.3d at 1153. If prison authorities waited until prosecutors decided whether to bring charges and criminal proceedings were completed, the offending inmate might remain in the prison as a threat to institutional order for an extended period.[1] If, on the other hand, prison authorities acted to maintain order by promptly sanctioning the inmate, criminal prosecution would be barred.

We conclude that these problems do not arise, because the prohibition against double jeopardy does not bar criminal prosecution for conduct that has been the subject of prison disciplinary sanctions for two independent reasons: 1) even if the sanctions were "punishment," they were integral parts of Brown's single punishment for armed robbery; and 2) the sanctions are not punishment for purposes of double jeopardy because they are solely remedial.

### A.

█ Even if we assume that withholding of good time credit and the disciplinary transfer were punitive, these sanctions were not distinct from Brown's punishment for his armed robbery conviction.

█ Revocation of parole or probation is regarded as reinstatement of the sentence for the underlying crime, not as punishment for the conduct leading to the revocation. *See United States v. Soto–Olivas*, 44 F.3d 788, 789, 791 (9th Cir.1995). Parole and pro-

---

1. Brown suggests prison authorities could hold the prisoner in administrative detention until prosecutors decide whether to bring criminal charges. However, requiring authorities to hold a prisoner in administrative detention while they await criminal proceedings would be the kind of significant intrusion into prison affairs courts have long sought to avoid. As the Third Circuit noted, "the adoption and execution of policies and practices necessary to preserve internal order and discipline, and to maintain institutional security in the prison are 'peculiarly within the province and professional expertise of corrections officials.'" *United States v. Newby*, 11 F.3d 1143, 1146 (3rd Cir.1993) (quoting *Bell v. Wolfish*, 441 U.S. 520, 548, 99 S.Ct. 1861, 1879, 60 L.Ed.2d 447 (1979)).

bation are part of the original sentence. Their continuance is conditioned on compliance with stated conditions—if the defendant does not comply with those conditions, parole and probation may be revoked. Revocation does not extend the original sentence, it simply alters the conditions under which it is served. The fact that the events which lead to revocation may also constitute a second crime does not mean the revocation itself is punishment for the second crime. *See id.*

Similarly, compliance with the conditions for awarding good time credit is one of the terms of the original sentence. *See* 18 U.S.C. § 3624(b)(1) (providing that a prisoner's sentence for a crime of violence may be reduced via good time credits if he has "displayed exemplary compliance with ... institutional disciplinary regulations"). Withholding such credits, even if "punitive," does not alter the original sentence, it only means the prisoner must serve a larger part of that sentence in prison.

■ As to the transfer, "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (holding that a transfer between prisons, even though "life in one prison is much more disagreeable than in another," generally does not implicate the due process clause). A change in the place of Brown's confinement based upon an administrative determination that his disruptive conduct required transfer to a higher security facility—even if "punitive"—did not alter the original sentence and so did not bar criminal prosecution for that same disruptive conduct.[2]

### B.

■ Moreover, withholding of good time credit and disciplinary transfer do not constitute punishment for double jeopardy purposes under the *Halper* standard because both are readily explained solely in remedial terms. Both serve the remedial goals of maintaining institutional order and encouraging compliance with prison rules in a situation "where good order and discipline are paramount because of the concentration of convicted criminals." *Newby*, 11 F.3d at 1145; *United States v. Hernandez–Fundora*, 49 F.3d 848, 852 (2d Cir.1995) ("[T]he fact that remedial concerns require 'punishing' individuals for violent or other disruptive conduct does not mean that the sanctions imposed constitute punishment for double jeopardy purposes."); *see also Garrity*, 41 F.3d at 1152–53 (7th Cir.1994) (rejecting argument that *Halper* altered the well-settled rule that prison disciplinary sanctions do not generally bar subsequent criminal prosecution for same conduct). *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir.1994) (holding that prison disciplinary hearings "do not implicate double jeopardy concerns").

Brown notes that prison officials conceded one purpose of the sanctions was to deter him and other prisoners from repeating the same conduct, that the disciplinary hearing focused on his culpability, and that the severity of the sanction was tied to the gravity of the offense. *See $405,089.23*, 33 F.3d at 1221 (noting that these factors suggest a sanction is "punishment"). However, in the prison context, such sanctions can still be explained solely as serving the government's remedial purpose of maintaining institutional order—they are designed to punish only insofar as such sanctions enable the government to fulfill its remedial goals. *See Hernandez–Fundora*, 49 F.3d at 852.

■ This is not a "rare" case in which a remedial sanction was so harsh as to constitute punishment. *See Halper*, 490 U.S. at 449, 109 S.Ct. at 1902; *Hernandez–Fundora*, 49 F.3d at 853. Withholding 41 days of good time credits and transferring Brown to a more secure institution in response to his

---

2. Although the double jeopardy clause does not bar criminal prosecutions for conduct that led to withholding of good time credit and disciplinary transfer, other constitutional protections, such as the right to due process and the prohibition of cruel and unusual punishment, do apply. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 555–58, 94 S.Ct. 2963, 2974–76, 41 L.Ed.2d 935 (1974) (holding that where the government creates a statutory right to good time credit contingent on good behavior, the government must comply with due process requirements in order to withhold or forfeit such credit).

assault on a prison guard and destruction of government property bears a rational relationship to the need for maintaining prison order. *Compare Newby,* 11 F.3d at 1145–46 (finding that forfeiture of *1000* days of good time credits and a disciplinary transfer for assaulting a prison guard and using intoxicants was not so disproportionate as to be punitive).

AFFIRMED.