Argued and submitted September 25, 1995, affirmed February 21, opinion
withdrawn by order March 28, 1996

## STATE OF OREGON,
*Respondent,*

*v.*

## DANIEL ROY REZIN,
*Appellant.*

### (94C-20442; CA A86141)

911 P2d 1264

Irene B. Taylor, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendant, an inmate at the Oregon State Penitentiary (OSP), appeals his convictions for second degree assault, ORS 163.175, and for being an inmate in possession of a weapon, ORS 166.275. We write only to discuss his argument that the disciplinary sanctions that he received at OSP as a result of the assault constituted punishment for the same offenses as these charges and that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution thus foreclosed any additional criminal sanctions. We affirm.

Defendant is serving sentences whose cumulative effect is that he will never be released from prison. While working as a clerk in the physical plant office at OSP, he assaulted another inmate by hitting him on the head from behind with a metal pipe; the victim almost died from his wounds. Defendant apparently believed that the other inmate was responsible for the disappearance of a picture of defendant's girlfriend and her young son.

After the assault, but before the trial on these criminal charges, defendant received disciplinary sanctions at OSP on charges of violating prison rules against assault and possession of a dangerous weapon. The sanctions consisted of 180 days of disciplinary segregation, with an additional 60 days suspended, and a $200 fine. Because this was defendant's tenth major disciplinary infraction, he was also placed in the Intensive Management Unit, where he may remain for up to five years.

On appeal, defendant asserts that his convictions violated the Double Jeopardy Clause of the Fifth Amendment as applied to the states through the Fourteenth Amendment.[1] He argues that, under *United States v. Halper*, 490 US 435, 109 S Ct 1892, 104 L Ed 2d 487 (1989), the discipline that he received constituted punishment for the same offense that was the basis for this prosecution and that his punishment on these convictions, therefore, violated the prohibition on multiple punishments for the same

---

[1] Defendant raises no issues under Oregon statutes or the Oregon Constitution.

offense. An examination of *Halper* shows that defendant's attempt to extend its reasoning to prison discipline is wrong.

In *Halper*, the defendant was convicted of 65 counts of submitting false Medicare claims, resulting in total overpayments of $585. The defendant was sentenced to two years in prison and fined $5,000 on the criminal convictions. Afterwards, the government sued him under the False Claims Act, seeking a statutory civil penalty of $2,000 for each violation, or a total of $130,000. The evidence suggested that the total cost to the government of the defendant's actions, including the expenses of investigation and prosecution, was approximately $16,000. The Supreme Court generally agreed with the defendant's argument that the civil penalties constituted impermissible additional punishment for his crimes, because the penalties did not fulfill any remedial purpose. It remanded the case to give the government an opportunity to show that its expenses were actually more in line with the statutory penalty and thus could be considered remedial rather than punitive.

The Court first pointed out that the Double Jeopardy Clause contains three protections: (1) against a second prosecution for the same offense after acquittal; (2) against a second prosecution for the same offense after conviction; and (3) against multiple punishments for the same offense. 490 US at 440. It then stated that a civil sanction could constitute punishment under the third (multiple punishment) protection when the sanction, as applied in the individual case, serves the goals of punishment. It distinguished those goals — retribution and deterrence — from the goals of civil sanctions, which it said are primarily remedial. The Court then held that the Double Jeopardy Clause prevents subjecting a defendant who has already been punished in a criminal prosecution to an additional civil sanction "to the extent that the second sanction may not fairly be characterized as remedial, but only as deterrent or retribution." 490 US at 447-49. *Halper* appeared to be one of the rare cases in which a civil sanction might actually be punishment, requiring the government to seek that sanction in the same proceeding in which it sought criminal punishment. 490 US at 449-51.

Defendant argues that, under *Halper*, the purpose of the OSP disciplinary sanctions was retributive or deterrent rather than remedial and, therefore, that it would violate the Double Jeopardy Clause to subject him to a second punishment by a criminal prosecution.[2] Every federal appellate court that has considered the issue has rejected that argument, *U.S. v. Brown*, 59 F3d 102 (9th Cir 1995); *U.S. v. Hernandez-Fundora*, 49 F3d 848, *amended* 58 F3d 802 (2d Cir 1995), *cert den* ___ US ___, 115 S Ct 2288 (1995); *Garrity v. Fielder*, 41 F3d 1150 (7th Cir 1994); *U.S. v. Newby*, 11 F3d 1143 (1993), as have at least two state courts, *State v. Walker*, 35 Conn App 431, 646 A2d 209, *cert den* 231 Conn 916, 648 A2d 159 (1994); *Wild v. Commonwealth*, 18 Va App 716, 446 SE2d 626 (1994). The state urges us to follow the federal analysis in this case. We agree with the results of those decisions but not with the approach used by most of the other courts to reach them.

As all courts emphasize, the fundamental consideration is that the defendant committed the new offenses while lawfully incarcerated. A prison contains a large number of people who have been convicted of crimes, often crimes of violence, and who are living in close relationship to each other under the supervision of a limited staff. Special rules are essential in a prison setting to maintain good order and to protect the security of the inmates, the staff, and the institution itself. A necessary condition of the sentence of incarceration itself is that the prisoner follow those rules. When a prisoner breaks the rules, the prison must be able to enforce them quickly, without waiting for the prosecuting authorities to determine whether to seek criminal sanctions. Courts stress that the prison's purpose in enforcing its rules is to maintain order in the prison, not to punish violations of the criminal law. *See Garrity*, 41 F3d at 1153; *Walker*, 35 Conn App at 435.

These general considerations, however, do not necessarily mean that the purpose for enforcing prison rules is exclusively, or even primarily, "remedial" in the sense in

---

[2] Defendant appears to assume that the disciplinary sanctions are for the same offenses as the criminal prosecution. As we explain below, he is incorrect.

which courts have used the term in applying *Halper*.[3] Certainly, as the federal courts have held, disciplinary sanctions further the "remedial" goal of maintaining order in a prison. *See, e.g., Newby*, 11 F3d at 1145. At the least, they disable the violator from further violations and remove the offender's potential disruptive influence from the general prison population.

Focusing on those things, federal courts have held that the purpose of prison discipline is remedial rather than punitive and that, as a result, a subsequent criminal trial does not violate the Double Jeopardy Clause.[4] We agree that, at least to the extent that the reason for placing defendant in segregation was to prevent him from making further attacks on the victim or others and to maintain control of the institution by removing a disruptive influence, that action furthers a nonpunitive goal. Thus, the sanctions do not implicate double jeopardy to the extent that they have that goal.

The existence of nonpunitive goals for prison discipline does not, however, resolve this case. We cannot avoid the basic fact that prison discipline is also punishment for violating prison rules. That is undoubtedly how prisoners view it. The legislature appears to have had the same opinion when it granted prison superintendents authority to enforce obedience to prison rules by "appropriate punishment." ORS 421.105. The disciplinary sanctions that OSP imposed on defendant clearly had the punitive purposes of

---

[3] In *Halper*, the United States Supreme Court used "remedial" in its primary sense of remedying something, of making whole a party who has been injured. Other courts use the term more broadly, to encompass all nonpunitive purposes for sanctions. Thus, we recently held that suspending the license of an intoxicated driver is "remedial" under *Halper* because it removes the danger of future harm that such a driver poses. *State v. Phillips*, 138 Or App 468, 473-74, 909 P2d 882 (1996). It might be more accurate to describe that as a "preventive" purpose; it is hard to see how preventing a future harm remedies a past injury. In this opinion, we will use the term "nonpunitive" instead of "remedial."

[4] Of course, prison discipline may maintain order in the institution by punishing offenders of prison rules, just as the criminal law maintains order in society by punishing offenders of criminal statutes. The mere existence of a nonpunitive goal for prison discipline, therefore, does not mean that the discipline does not have a punitive purpose as well.

punishing him for violating those rules and of deterring other violations.[5]

That disciplinary sanctions are punishment does not mean that they prevent a later prosecution for the same conduct. That will happen under *Halper* only if the sanctions are punishment *for the same offense* that is at issue in the criminal prosecution. The crucial issue, thus, is not whether defendant has received multiple punishments for his assault on the victim but whether those punishments are for the same offense. Because prison discipline affects the nature of the punishment for defendant's prior convictions rather than constituting punishment for a new offense, the sanctions that defendant received do not prevent a new criminal prosecution for the same conduct.

When defendant was sentenced to incarceration for his previous offenses, one of the necessary conditions of that sentence was that he abide by the rules of OSP, the institution to which he was sent. A corollary to that condition, which ORS 421.105 makes explicit, is that OSP had the authority to punish him if he failed to do so. Punishment for violating institutional rules is not punishment for new crimes that defendant commits while incarcerated; rather it simply changes the nature of the punishment that he is already undergoing as the result of his convictions for his previous crimes.

---

[5] It is not clear whether a sanction that has more than one purpose is nonpunitive for double jeopardy purposes if the nonpunitive purposes outweigh the punitive purposes. *Halper* appears to hold, inconsistently, both that a sanction implicates the Double Jeopardy Clause if it merely contains a punitive element *and* that it does so only if the exclusive purpose of the sanction is punitive. The Court said, in the same paragraph, that "a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained *as also serving* either retributive or deterrent purposes, *is punishment*" and that a defendant may not again be punished "to the extent that the second sanction may not fairly be characterized as remedial, *but only* as a deterrent or retribution." 490 US at 448-49 (emphasis supplied). Two courts have recently resolved this inconsistency in opposite ways. *Compare Stratemeyer v. State*, 107 Md App 420, 668 A2d 948 (1995) (any punitive purpose makes a sanction punishment) *with State v. Hickam*, 235 Conn 614, 668 A2d 1321 (1995) (sanction implicates Double Jeopardy Clause only to extent that its purpose is not remedial but is exclusively deterrence or retribution). Because we conclude that defendant's prison discipline affects the nature of the punishment for the crimes for which he was already incarcerated rather than constituting punishment for a new criminal offense, we do need to resolve this problem.

A convicted prisoner is undergoing punishment for earlier offenses by suffering a deprivation of the prisoner's liberty. The extent of that deprivation depends in part on the prisoner's compliance with prison rules; compliance may permit less rigorous conditions, while lack of compliance will lead to greater rigor. Punitive sanctions imposed for the violation of prison rules are thus part of the punishment for the offenses that brought the prisoner to the prison in the first place; they are not punishment for a new criminal offense.[6] When defendant attacked his victim, he violated prison rules against assault and possession of a weapon and subjected himself to prison discipline for those violations. It was irrelevant to that discipline that his actions were also criminal.[7] He was already serving a sentence as punishment for his previous crimes; the disciplinary sanctions that he received simply affect the nature of his punishment for those crimes. Defendant would not be subject to prison discipline at all if he had not committed his previous crimes; what happens to him while he is in prison as a result of those crimes, thus, relates to those earlier offenses.

Prison rules are similar in this respect to conditions of probation or post-prison supervision. Those programs are punishments that are alternatives to incarceration. A convicted person who participates in either program must comply with a number of general or special rules, including abiding by all applicable criminal and other laws. If the person violates those conditions, the court or board has the authority to impose sanctions that may include incarceration. *See* ORS 137.540(1)(j); ORS 144.102(1)(f); ORS 144.106; ORS 144.108. If a violation of the conditions

---

[6] This includes the sanction of a fine. Under OSP's rules, defendant must pay the fine from his earnings. As a result, he will receive less for his prison work than he would without the fine. The fine therefore affects the conditions of his confinement on his previous offense.

[7] Some prison rules prohibit activity that would not be subject to criminal or other sanctions outside of a prison setting. Thus, defendant would face discipline if he possessed money or uncancelled stamps or if he directed hostile language or gestures toward another person. ORS 421.105 authorizes punishment for the violation of *any* prison rule, not just those rules that may have criminal analogues. This emphasizes the lack of connection between prison disciplinary rules and the criminal statutes.

of post-prison supervision involves new criminal activity, the result may be to return the person to a correctional facility. ORS 144.108(1). Although imprisonment for having violated that condition would be punishment, it would not implicate the Double Jeopardy Clause. "The fact that the events which lead to revocation [of parole] may also constitute a second crime does not mean [that] the revocation itself is punishment for the second crime." *Brown*, 59 F3d at 104-05. Rather, like prison discipline, the sanctions are part of the punishment for the earlier crimes.

In summary, we conclude that sanctions for actions that may violate the criminal law do not implicate the double jeopardy clause if their purpose is nonpunitive. We further conclude that, in a prison setting, punitive sanctions that affect the nature of the punishment for the convictions that led to the prisoner's incarceration do not prevent a future criminal prosecution for the conduct that resulted in the sanction.[8]

Affirmed.

---

[8] We do not need to consider in this case when discipline for a pretrial detainee's violation of the conditions of detention may constitute punishment. On that issue, *see Bell v. Wolfish*, 441 US 520, 537-40, 99 S Ct 1861, 60 L Ed 2d 447 (1979); *Walker*, 35 Conn App at 435, 438-39.