STATE of Maine

v.

Arthur O'CONNOR.

Supreme Judicial Court of Maine.

Argued June 12, 1996.

Decided Aug. 22, 1996.

Geoffrey A. Rushlau (orally), District Attorney, Rockland, for the State.

Valerie Stanfill (orally), Berman & Simmons, P.A., Lewiston, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, and LIPEZ, JJ.

LIPEZ, Justice.

Arthur O'Connor appeals from the entry of a judgment in the Superior Court (Knox County, *Mead, J.*) denying his motion to dismiss the indictment against him. He contends that his criminal prosecution for assault on a corrections officer in violation of 17–A M.R.S.A. § 752–A(1)(B) (Supp.1995) is barred by the Double Jeopardy Clauses of the state and federal constitutions because prison authorities previously revoked thirty days of his good time credits.

## Background

O'Connor was a prisoner at the Maine State Prison in Thomaston, serving the remainder of a sentence after violating his probation. At a prison disciplinary hearing held in November 1994, prison guard Terrell Perkins reported that O'Connor had run his hand "up her crotch." Although O'Connor had stated during an earlier investigation of the incident by prison authorities that he had merely bumped into Officer Perkins, he invoked his Fifth Amendment privilege against self-incrimination at the hearing because of pending criminal charges based on that incident. As a result of the uncontroverted evidence presented at the hearing, prison authorities imposed thirty days of cell restriction on O'Connor[1] and the forfeiture of thirty days of good time credits.

In March 1995 O'Connor was indicted on a single count of assault against a corrections officer in violation of 17–A M.R.S.A. § 752–A(1)(B). O'Connor brought a motion to dismiss the indictment, arguing that it violated the Double Jeopardy Clauses of the state and federal constitutions. After a hearing, the court denied O'Connor's motion to dismiss. O'Connor appeals from that denial.[2]

## Discussion

■ Whether a criminal prosecution violates the state or federal constitutional prohibition against double jeopardy is a question of law. *State v. Millett,* 669 A.2d 754, 755 (Me.1996) (citing *United States v. Furlett,* 974 F.2d 839, 842 (7th Cir.1992)). We review questions of law de novo. *Estate of Hardy,* 609 A.2d 1162, 1163 (Me.1992).

■ The Double Jeopardy Clauses of the state[3] and federal[4] constitutions are coextensive, *State v. Wilson,* 671 A.2d 958, 960 (Me.1996), and they protect a criminal defen-

---

1. Certain conditions on O'Connor's cell restriction were also imposed, including the loss of radio and T.V. privileges.

2. O'Connor finished serving the remainder of his sentence. He is currently out on bail with respect to the assault charge.

3. The Maine Constitution provides in relevant part:

dant from three distinct abuses: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense". *State v. Savard*, 659 A.2d 1265, 1266 (Me.1995) (citing *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989)). O'Connor claims that the third abuse is present in the instant case because he is being criminally prosecuted for conduct for which he was already punished. Specifically, he contends that the forfeiture of thirty days good time credits, imposed by prison authorities after the disciplinary hearing, was "punishment."

■ In multiple punishment cases, the constitutional protection from double jeopardy is available if three conditions are present: (1) the sanction in each forum is for the same conduct; (2) the non-criminal sanction and the criminal prosecution are imposed in separate proceedings; and (3) the non-criminal sanction constitutes punishment. *Savard*, 659 A.2d at 1266 (citing and interpreting *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994)). In this case the parties agree that the forfeiture of good time and the criminal prosecution are for the same conduct and that they involve separate proceedings. They dispute whether the forfeiture of thirty days of good time imposed on O'Connor as a result of the prison disciplinary hearing constitutes a "punishment" for double jeopardy purposes.

In *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court considered "whether and under what circumstances a civil penalty may constitute a 'punishment' for the purpose of double jeopardy analysis." *Halper*, 490 U.S. at 436, 109 S.Ct. at 1895. Specifically, the issue in that case was whether fines imposed pursuant to the civil False Claims Act, 31 U.S.C. §§ 3729–3731 (1983 & Supp.1996), after the defendants had already been criminally convicted pursuant to the criminal false claims statute, 18 U.S.C. § 287 (Supp.1996), constituted "punishment" for double jeopardy purposes. In holding that the civil fines were a second punishment for the same conduct, *Halper* directed courts to look beyond labels to the actual nature of the sanctions imposed, 490 U.S. at 447, 109 S.Ct. at 1901, and to consider the purposes of the sanction in question rather than how it "feels" to the defendant or the nature of the underlying proceeding giving rise to the sanction. 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7. Although a particular sanction may carry "the sting of punishment" for the defendant, the purposes served by the sanction in question are determinative. *Id.*

■ Since *Halper*, we have applied the remedial versus retributive framework to cases involving criminal prosecutions that followed civil penalties or administrative sanctions.[5] *See, e.g., Millett*, 669 A.2d at 756 (application of *Halper* framework to criminal prosecution for theft by unauthorized transfer following an administrative hearing imposing sanctions for the same conduct); *Savard*, 659 A.2d at 1267 (application of *Halper* framework to criminal prosecution for OUI following an administrative hearing affirming the suspension of defendant's motor vehicle

No person, for the same offense, shall be twice put in jeopardy of life or limb.
Me. Const. art. I, § 8.

4. The United States Constitution provides in relevant part:
    [N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb. . . .
U.S. Const. amend. V. This constitutional provision applies to the states through the due process clause of the fourteenth amendment. *Benton v. Maryland*, 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707 (1969).

5. The recent Supreme Court decision, *United States v. Ursery*, —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) does not alter our analysis in this case. In *Ursery*, the Court rejected the applicability of *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) to claims of double jeopardy based on the combination of criminal punishment and the enforcement of civil forfeiture statutes. *Ursery*, —— U.S. at ————, 116 S.Ct. at 2146–47. At the same time, the Supreme Court emphasized the essential holding of *Halper*: " 'We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished . . . may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.' " *Ursery*, —— U.S. at —— n. 2, 116 S.Ct. at 2145 n. 2 (quoting *Halper*, 490 U.S. at 448–49, 109 S.Ct. at 1902).

driver's license for OUI). The sanctions imposed pursuant to prison discipline are administrative sanctions, *see, e.g., United States v. Newby,* 11 F.3d 1143, 1145 (3rd Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 1841, 128 L.Ed.2d 468 *and cert. denied,* —— U.S. ——, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994), including the loss of good time credits. *Id.*

■ The question here is whether the forfeiture of good time that was imposed on O'Connor after the prison disciplinary hearing was remedial or retributive in nature. O'Connor argues that the loss of good time should be considered punitive because the disciplinary procedures manual of the Department of Corrections labels the loss of good time a "punishment": "[t]he following are the *punishments* which may be imposed by a Disciplinary Committee upon conviction of a violation of the rules and regulations.... Loss of good time, up to 30 days." He also argues that the forfeiture of thirty days "up front" good time lengthened his sentence and thus was a punitive rather than remedial sanction.[6]

Since *Halper,* at least two circuit courts and one state court have held that sanctions imposed as a result of prison disciplinary hearings are remedial, not punitive. *United States v. Hernandez–Fundora,* 58 F.3d 802, 806–07 (2d Cir.1995) (adopting remedial classification of prison disciplinary sanctions enunciated by *Newby* ); *Newby, cert. denied,* —— U.S. ——, 115 S.Ct. 2288, 132 L.Ed.2d 290 (1995), *amended and superseded on remand on other grounds,* 896 F.Supp. 276 (1995); 11 F.3d at 1145 (loss of good time and other prison disciplinary sanctions are not " 'so divorced from the remedial goal' " of

the government to encourage good conduct and to maintain order in the prison, given that prison is a place where good order and discipline are paramount because of the concentration of convicted criminals"), (quoting from *Halper,* 490 U.S. at 443, 109 S.Ct. at 1898); *State v. Walker,* 35 Conn.App. 431, 646 A.2d 209, 212, *cert. denied,* 231 Conn. 916, 648 A.2d 159 (1994). This remedial analysis is consistent with the provision in our law that expressly conditions the allowance of good time on observance of all rules of the Department of Corrections and the particular penal institution where the defendant is in custody. 17–A M.R.S.A. § 1253(3) (Supp. 1995). It also is consistent with the provision stating that good time awarded pursuant to section 1253(3) can be deducted for "the infraction of any rule of the institution, for any misconduct or for the violation of any law of the State." *Id.* § 1253(6) (Supp.1996). The head of the institution "may restore any portion [of good time deducted] if the person's later conduct and outstanding effort warrant that restoration." *Id.* These provisions emphasize that the remedial purpose of promoting and maintaining good conduct in prison underlies the allowance and deduction of good time. The fact that O'Connor forfeited thirty days of "up front" good time credits does not alter this remedial purpose.[7]

The entry is:

Order affirmed.

All concurring.

---

6. The "good time" statute provides for a "front end" award of credit for the maximum allowable period of time based on the inmate's sentence. 17–A M.R.S.A. § 1253(3) (Supp.1995). In other words, upon the first day of execution of an inmate's sentence, the inmate is entitled to an award of good time credit that presupposes the maximum allowable amount (ten days credit for every thirty days spent in prison). *Id.* Thus, at the time defendants start serving their sentence, they know, based on the up front award of the maximum allowable amount of good time credit, their prospective release date. Because the award of good time credit under section 1253(3) is expressly conditioned upon observance of all rules of the Department of Corrections and the particular penal institution where a defendant is

in custody, however, *id.,* deductions may be made from the up front award for misconduct or criminal behavior. *Id.* at § 1253(6) (Supp.1995). Thus, despite the up front award, there is always a possibility that deductions will be made and defendants will serve the full length of their original sentences rather than the sentences as shortened by the up front award.

7. *See Bossie v. State,* 488 A.2d 477, 479 (Me. 1985) (holding that a retroactive application of section 17–A M.R.S.A. § 1253(3) calculating good time for criminal defendants already in custody was an unconstitutional usurpation of the governor's commutation power).