695 A.2d 199

James **ROBINSON**

v.

**STATE of Maryland**

**No. 738, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

June 18, 1997.

2

Sherrie B. Glasser, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Mary Ellen Barbera, Assistant Attorney General, Baltimore (J. Joseph Curran, Jr., Attorney General, Baltimore, and Frank R. Weathersbee, State's Attorney for Arundel County, Annapolis, on the brief), for Appellee.

Submitted before HOLLANDER and THIEME, JJ., and ROBERT C. MURPHY, J. (Retired, Specially Assigned).

MURPHY, Judge.

James Robinson (Appellant), an inmate in the State penal system, was serving a 60–year sentence for robbery-related offenses when he assaulted an officer at the Maryland House of Correction at Jessup on October 4, 1994. This latter misbehavior netted Appellant administrative sanctions: 400 days in segregation and the loss of 400 days' good conduct time. It also resulted in his criminal prosecution. An Anne Arundel County Circuit Court jury convicted Appellant of battery. On February 14, 1996, the court sentenced him to a term of 12 years consecutive to the time he was already serving.

Appellant argues before us that the administrative action taken against him in the prison system was punishment within the contemplation of the Double Jeopardy Clause of the Fifth Amendment and thus barred the subsequent criminal prosecution. At sentencing, Appellant told the court:

> Your Honor, I would like to say that I've been punished more than once for this offense. I was punished by the State and now I'm being punished by the State once again. I was told, and I've read that, you know, a person can't be prosecuted twice. I have been tried by the institution. I've stood trial in here again by another portion of the State. And, I don't feel as though what's been done to me is justifiable. I'm being punished more than once for an offense that occurred.... And, I would like to ask that you take that into consideration. The fact that I've been punished more than once.

The trial court responded:

> You talk about having been punished once for this offense. I don't know of any law that says it's double jeopardy for

4

the administrative team to exact some type of administrative sanction for what's happened in this case.

The Double Jeopardy Clause of the Fifth Amendment proclaims that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This constitutional guarantee is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980), citing *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).[1] The Double Jeopardy Clause

protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.

*United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). We are concerned with the last of the three. *See Flaherty v. State,* 322 Md. 356, 365, 587 A.2d 522 (1991).

For support of his contention that 400 days in segregation and the loss of 400 days' good conduct time barred his being criminally punished, Appellant directs us to *Department of Revenue of Montana v. Kurth,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In *Kurth,* the Supreme Court held that the state could not tax illegal drugs at several times their market value after the defendants had been convicted for drug law violations, because the tax constituted an impermissible second punishment.

This drug tax is not the kind of remedial sanction that may follow the first punishment of a criminal offense. Instead, it is a second punishment within the contemplation of a constitutional protection that has "deep roots in our

---

1. "Although the Maryland Constitution does not contain a provision prohibiting double jeopardy, the right was recognized in the common law long before the adoption of the Fifth Amendment, and was applied by our courts for many years before the decision in *Benton." In re Montrail M.,* 325 Md. 527, 531, 601 A.2d 1102 (1992) (citations omitted).

history and jurisprudence," ... and therefore must be imposed during the first prosecution or not at all. 511 U.S. at 784, 114 S.Ct. at 1948, citing *U.S. v. Halper, supra,* 490 U.S. at 440, 109 S.Ct. at 1897.

Appellant also draws our attention to *State v. Jones,* 340 Md. 235, 666 A.2d 128 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1265, 134 L.Ed.2d 213 (1996), which he says stands for the proposition that an administrative sanction survives double jeopardy scrutiny if it "can fairly be justified solely by remedial purposes...." Appellant misinterprets *Jones* and the Supreme Court cases upon which *Jones* relied.

*Jones* involved a man prosecuted for driving while intoxicated even though an administrative law judge had already suspended his driver's license. In determining that a subsequent criminal prosecution was not barred by the administrative action, the Court of Appeals noted "that license suspensions generally serve remedial purposes." 340 Md. at 251, 666 A.2d 128. The Court further observed that the legislative history of the statute permitting license suspensions "demonstrates that *both punitive and remedial* purposes motivated the legislators in enacting the amendments that created [Maryland Code, Transportation Article (1977, 1992 Repl.Vol., 1994 Cum.Supp.)] § 16–205.1's administrative per se license suspension provisions." *Id.* at 259, 666 A.2d 128 (emphasis added). Rejecting the double jeopardy argument raised by Jones, the Court said:

> In *Halper,* the Supreme Court examined a statute that served both punitive and remedial goals and determined that if the remedial goals by themselves justified the sanction imposed, then the statute did not impose a "punishment" for purposes of double jeopardy.

*Id.* at 263–64, 666 A.2d 128 (citation omitted).

In other words, if an administrative sanction can be characterized as remedial rather than as one whose main purpose is deterrence or retribution, it may not be barred by the Double Jeopardy Clause. *U.S. v. Halper, supra,* 490 U.S. at 448–49, 109 S.Ct. at 1902. Even if the sanction has some

punitive effect, it can withstand constitutional scrutiny. "[F]or the defendant even remedial sanctions carry the sting of punishment." *State v. Jones, supra,* 340 Md. at 249, 666 A.2d 128, quoting *United States v. Halper, supra,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7.[2]

■ *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), a case involving forfeiture and not prison regulations, recognized that a remedial sanction may have "certain punitive aspects" while at the same time serving "important nonpunitive goals." —— U.S. at ——, 116 S.Ct. at 2148. A civil proceeding under *Halper* and *Ursery* would constitute double jeopardy only when the sanction is so punitive in form and effect as to negate the civil intent. *Ursery,* —— U.S. at —— – ——, 116 S.Ct. at 2147–48.[3]

Appellant is not the first inmate to contend that criminal prosecutions following administrative sanctions violate the double jeopardy clause. Of the courts that have entertained this question, the overwhelming consensus is that such claims are without merit. "It is now well settled that 'punishment' imposed by prison authorities for infractions of prison regulations does not generally bar a subsequent criminal prosecution for the same conduct." *United States v. Hernandez–Fundora,* 58 F.3d 802, 806 (2d Cir.), *cert. denied,* —— U.S. ——, 115

---

**2.** *Parojinog v. State,* 282 Md. 256, 384 A.2d 86 (1978), also cited by Appellant, is inapposite. In *Parojinog,* the Court of Appeals barred the criminal prosecution of a 17–year–old boy who had already been ordered by a juvenile court to pay restitution and undergo full-time psychiatric therapy for the same offenses. The Court noted that "the Supreme Court has held that the federal constitutional guarantee against being twice placed in jeopardy is fully applicable to juvenile adjudicatory proceedings, *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975)." 282 Md. at 260, 384 A.2d 86. As noted below, the prison discipline system exists to maintain institutional security and order, not to adjudicate guilt or innocence.

**3.** Ten days after the Court of Appeals decision in *Jones,* the Fourth Circuit handed down *United States v. Imngren,* 98 F.3d 811 (4th Cir.1996), which applied *Ursery* to uphold a drunk driving conviction that followed a license suspension.

S.Ct. 2288, 132 L.Ed.2d 290 (1995), citing *United States v. Rising,* 867 F.2d 1255 (10th Cir.1989); *Kerns v. Parratt,* 672 F.2d 690 (8th Cir.1982); and *United States v. Stuckey,* 441 F.2d 1104 (3d Cir.), *cert. denied,* 404 U.S. 841, 92 S.Ct. 136, 30 L.Ed.2d 76 (1971). *Accord United States v. Galan,* 82 F.3d 639, 640 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 179, 136 L.Ed.2d 119 (1996) (agreeing with the "uniform conclusion" of other circuits that prison disciplinary proceedings do not bar future criminal prosecutions); *Garrity v. Fiedler,* 41 F.3d 1150, 1152 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1420, 131 L.Ed.2d 303 (1995) ("We have previously held that prison discipline does not preclude a subsequent criminal prosecution or punishment for the same acts.... Every other Circuit that has addressed this issue has agreed."); *State v. Harlin,* 260 Kan. 881, 925 P.2d 1149, 1151–52 (1996) (jurisdictions that have considered whether a subsequent criminal prosecution can be brought "have unanimously rejected the application of double jeopardy in all but some rare extreme facts not before the court."); *Commonwealth v. Forte,* 423 Mass. 672, 671 N.E.2d 1218, 1220 (1996) ("Opinions of the United States Courts of Appeal have unanimously agreed that the double jeopardy clause does not preclude both prison discipline and a criminal prosecution (and a further sentence) based on the same acts."); *State v. McKenzie,* 542 N.W.2d 616, 620 (Minn.1996) ("Several federal circuit courts and state appellate courts have applied *Halper* in the context of prison discipline and have unanimously held that no double jeopardy violation occurred."); *State v. Nelson,* 275 Mont. 86, 910 P.2d 247, 250–51 (1996) ("Typically, both state and federal jurisdictions have held that prison disciplinary proceedings are remedial in nature and present no impediment to subsequent criminal proceedings involving the same conduct"); *Cordero v. Lalor,* 227 A.D.2d 848, 642 N.Y.S.2d 399, 400 (3d Dept.1996) (discussing "the well-settled principle that 'punishment' imposed by prison authorities for infractions of prison regulations does not generally bar subsequent criminal prosecution for the same conduct ... "); *State v. Rezin,* 139 Or.App. 156,

911 P.2d 1264, 1265 (1996)[4] ("Every federal appellate court
that has considered [the contention that prison disciplinary
sanctions bar a subsequent criminal prosecution] has rejected
that argument...."); *State v. Beck*, 545 N.W.2d 811, 815–16
(S.D.1996) (discussing jurisdictions that reject "the *Halper*
test when determining whether prison discipline equals pun-
ishment for double jeopardy purposes."); *Hernandez v. State*,
904 S.W.2d 808, 810 (Tex.App.1995) (Texas and federal courts
"have consistently held that disciplinary sanctions imposed by
prison officials for crimes committed within the prison do not
bar subsequent prosecution for those crimes in a court of
competent jurisdiction"); *State v. Fonder*, 162 Wis.2d 591, 469
N.W.2d 922, 925–26 (1991) (the "overwhelming view of other
courts" is that prison sanctions do not foreclose subsequent
criminal prosecution).

Significantly, several decisions from other jurisdictions have
concerned factual situations similar to Appellant's: criminal
prosecutions following institutional disciplinary measures for
assaults on correctional officials. *See United States v. Newby*,
11 F.3d 1143, 1144, (3d Cir.1993), *cert. denied*, 513 U.S. 834,
115 S.Ct. 111, 130 L.Ed.2d 58 (1994) (one of two inmates in the
case was convicted of assaulting a prison guard); *United
States v. Brown*, 59 F.3d 102, 103 (9th Cir.1995); *State v.
Walker*, 35 Conn.App. 431, 646 A.2d 209, 210, *cert. denied*, 231
Conn. 916, 648 A.2d 159 (1994); *People v. Watson*, 892 P.2d
388, 389 (Colo.App.1994); *State v. Harlin, supra*, 925 P.2d at
1150; *State v. O'Connor*, 681 A.2d 475, 476 (Me.1996); *Com-
monwealth v. Forte, supra*, 671 N.E.2d at 1218; *Hernandez v.
State, supra*, 904 S.W.2d at 809; *Wild v. Commonwealth*, 18
Va.App. 716, 446 S.E.2d 626 (1994); *State v. Fonder, supra*,
469 N.W.2d at 923.

▮ The virtually uniform result in prison discipline cases
comes from the recognition that administrative sanctions for
violating prison regulations are basically remedial, not puni-

---

4. The *Rezin* decision was officially withdrawn after Appellant's counsel
moved for dismissal because Appellant had died 15 days before the
appellate court decided the case. 911 P.2d at 1268.

tive. *United States v. Brown, supra,* 59 F.3d at 105; *State v. O'Connor, supra,* 681 A.2d at 477–78. *Cf. Ward v. Dept. of Pub. Saf. and Cor. Services,* 339 Md. 343, 350–51, 663 A.2d 66 (1995) (because disciplinary sanctions imposed on correctional employees are remedial they do not implicate double jeopardy protections).

 The primary purpose of the disciplinary system itself is not punishment. *People v. Watson, supra,* 892 P.2d at 390; *Wild v. Commonwealth,* 18 Va.App. 716, 446 S.E.2d 626, 627 (1994). Nor is the system part of a criminal prosecution. *Lucero v. Gunter,* 17 F.3d 1347, 1351 (10th Cir.1994).

> The ability of prison authorities to revoke good time credits was designed to encourage inmates to continue their good conduct and was, thus, rationally related to the remedial goal.

*State v. Lynch,* 248 Neb. 234, 533 N.W.2d 905, 910 (1995).

 The disciplinary system by which inmates are governed while in the care of penal facilities "is designed to maintain institutional security and order." *Garrity v. Fiedler, supra,* 41 F.3d at 1153. Prison is a place where "good order and discipline are paramount because of the concentration of convicted criminals." *United States v. Newby, supra,* 11 F.3d at 1145, 1146. Disciplinary sanctions are designed to punish "only insofar as they enable the government to fulfill its remedial goals." *United States v. Brown, supra,* 59 F.3d at 105. The adoption and execution of prison policies are "peculiarly within the province and professional expertise of corrections officials" whose judgment should generally be deferred to by the courts. *Bell v. Wolfish,* 441 U.S. 520, 547–48, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), quoting *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974). Because prison security and the safety of its population are in their hands, prison officials "must have a wide discretion in promulgating rules to govern the prison population and in imposing disciplinary sanctions for their violation." *McCloskey v. Maryland,* 337 F.2d 72, 74 (4th Cir.1964).

Punitive interests and remedial interests ... are nowhere so tightly intertwined as in the prison setting, where the government's remedial interest is to maintain order and to prevent violent altercations among a population of criminals. Accordingly, the mere fact that a sanction imposed by prison officials has a punitive component does not mean that the sanction constitutes "punishment" for double jeopardy purposes.

*United States v. Hernandez-Fundora, supra,* 58 F.3d at 806.

If institutional disciplinary measures were to bar subsequent criminal prosecutions, prison officials would

be forced to choose between instituting a disciplinary proceeding or awaiting a criminal prosecution. The process of conducting a criminal investigation and prosecution may take considerable time. The difficulties and delay that a criminal prosecution entails would leave the prisoners who violated the prison rules without a prompt resolution of charges and hinder prison administration and discipline.

*United States v. Newby, supra,* 11 F.3d at 1146 (footnote omitted).

If prison authorities waited until prosecutors decided whether to bring charges and criminal proceedings were completed, the offending inmate might remain in the prison as a threat to institutional order for an extended period. If, on the other hand, prison authorities acted to maintain order by promptly sanctioning the inmate, criminal prosecutions would be barred.

*United States v. Brown, supra,* 59 F.3d at 104.

The action taken by prison authorities in Appellant's case was not of the kind that brings the Double Jeopardy Clause into play. Therefore, Appellant's conviction and sentence for assaulting a correctional employee will stand.

*JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.*