**Louis B. BUENABENTA,**
Plaintiff–Appellant,

v.

Gary **NEET, Warden, Gloria Masterson, Administrative Service Manager, Robert Allen, Associate Warden, Lisa Lehn, Hearings Officer, Richard Martinez, Chairperson, and Whitman West, Case Manager, Defendants–Appellees.**

No. 05CA1090.

Colorado Court of Appeals, Div. II.

Feb. 8, 2007.

Louis B. Buenabenta, Pro Se.

John W. Suthers, Attorney General, Deann Conroy, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge TERRY.

Inmate, Louis Buenabenta, appeals from the district court's judgment rejecting his challenges to the prison disciplinary actions taken by defendants, Gary Neet, Gloria Masterson, Robert Allen, Lisa Lehn, Richard Martinez, and Whitman West, all of whom are prison officials. We affirm.

## I.

On May 2, 2003, inmate, who was confined at the Fremont Correctional Facility in Cañon City, Colorado, was involved in two incidents that resulted in Colorado Department of Corrections (DOC) convictions. The first conviction was for possession of a syringe or drug paraphernalia, for which he was sentenced to seventeen days punitive segregation with a seven-day credit for time served. The second conviction was for a charge of tattooing or possession of tattooing paraphernalia, for which he received twenty days punitive segregation. The sentences were to run consecutively.

Shortly thereafter, inmate received a letter from the warden informing him that his visitation privileges were suspended for three years because he had been convicted of three drug-related offenses during his incarceration.

Inmate later received a Notice for Administrative Segregation (Notice). As grounds for imposing administrative segregation, the Notice referenced inmate's DOC convictions for drug-related offenses, and alleged that inmate presented a security threat to the general population of the facility. At the close of the administrative segregation hearing, a determination was made to place inmate in administrative segregation. After an intra-facility appeal initiated by inmate, the administrative segregation classification was upheld.

This action was initiated in the Fremont County District Court under C.R.C.P. 106. In its detailed and thorough ruling on inmate's C.R.C.P. 106 complaint, the district court rejected inmate's challenges to his convictions arising from the events of May 2, 2003; to the suspension of his visitation privileges; and to the decision assigning him to maximum security administrative segregation.

## II.

Inmate first contends that his convictions for possession of syringe or drug paraphernalia, on the one hand, and tattooing or possession of tattooing paraphernalia, on the other hand, arose out of the same incident, and thus that the sentences imposed for each violation should run concurrently. We disagree.

A disciplinary hearing is a quasi-judicial activity that may be reviewed pursuant to C.R.C.P. 106(a)(4). *Kodama v. Johnson,* 786 P.2d 417 (Colo.1990); *Villa v. Gunter,* 862 P.2d 1033 (Colo.App.1993). Our review of the quasi-judicial actions of the prison disciplinary board, like that of the district court, is limited to determining whether the board exceeded its jurisdiction or abused its discretion, based on the evidence in the record available to the board. C.R.C.P. 106(a)(4)(I); *Kodama, supra.* The decisions of the prison disciplinary board will be upheld if some evidence in the record supports its conclusion. *Kodama,* 786 P.2d at 420 (citing *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)).

In two separate hearings, the prison disciplinary board determined that inmate violated the following two sections of DOC Code of Penal Discipline (COPD), Admin. Reg. 150–01:

*Class II Offenses*

(11) Possession of Syringe or Drug Paraphernalia—an offender commits this offense when he possesses a syringe or other implement capable of injecting a substance under the skin of any individual, including himself, and/or possesses an article, equipment, or apparatus capable of administering a dangerous drug or volatile substance.

. . . .

(20) Tattooing and/or Possession of Tattooing Paraphernalia—an offender commits this offense when he receives or gives a tattoo or has in his possession any tattooing paraphernalia to include but not limited to patterns, ink, needles, or altered electrical appliances.

The Code also states: "Sanctions should be imposed concurrently for cumulative offenses arising out of the same act and/or incident." COPD § IV(E)(3)(p)(10).

■ Inmate claims that the two convictions arose out of the same incident because the search of his cell, which resulted in the discovery of tattoo paraphernalia, was performed as a direct result of the discovery earlier that evening of his possession of drug paraphernalia. In support of this claim, inmate relies on the "same criminal episode" test articulated in *Jeffrey v. District Court*, 626 P.2d 631 (Colo.1981), and *People v. Dalton*, 70 P.3d 517 (Colo.App.2002). Under that test, " 'a series of acts arising from the same criminal episode' would include physical acts that are committed simultaneously or in close sequence, that occur in the same place or closely related places, and that form part of a schematic whole." *Jeffrey*, 626 P.2d at 639; *see Dalton*, 70 P.3d at 522.

Although the "same criminal episode" test was applied in *Jeffrey* and *Dalton* to determine the appropriateness of the joinder of offenses under Crim. P. 8, we find it instructive in analyzing inmate's claim, especially because the language of Crim. P. 8(a)(1) and 8(b) (referencing separate counts based on "the same act or series of acts arising from the same criminal episode") bears similarity to the language of COPD § IV(E)(3)(p)(10) (referencing "cumulative offenses arising out of the same act and/or incident").

Here, the events that led to inmate's drug paraphernalia conviction arose on May 2, 2003, when a corrections officer observed him tampering with an electrical box in the janitor's closet. The electrical box was searched by a corrections officer, who found an altered medical syringe inside. As a result, inmate was placed in segregation.

The events leading to the tattoo conviction occurred later that same evening, when a search of inmate's cell revealed that he had hidden a tattooing device and related materials among his personal effects.

Inmates are subject to having their cells searched at any time, with or without cause. DOC Admin. Reg. 300–06. While the search of inmate's cell may have been prompted in part by the drug paraphernalia discovery earlier that evening, that fact in itself does not render the two offenses part of the same act or incident under COPD § IV(E)(3)(p)(10).

The board could reasonably conclude that the offenses in issue were two separate offenses. The items giving rise to the offenses were secreted in separate locations. The syringe was found in a janitor's closet, and the tattoo materials were found in inmate's cell. The two offenses did not necessarily involve related activities: one set of materials was for the purpose of injecting drugs, and the other for the purpose of tattooing. Under the factors articulated in *Jeffrey, supra,* and *Dalton, supra,* they were properly treated as separate offenses. *See also People v. Matheson*, 671 P.2d 968 (Colo.App. 1983) (where defendant committed sexual assault while at the same time violating a restraining order, the two offenses constituted separate episodes of conduct for purposes of double jeopardy analysis).

Because there is some evidence in the record to support the conclusions of the prison disciplinary board, *see Kodama, supra,* we conclude the board did not abuse its discretion when it determined that the two code violations were separate incidents that warranted consecutive, rather than concurrent, sentences.

III.

■ Inmate next contends that the suspension of his visitation privileges without a

hearing violated his due process rights under the Fourteenth Amendment to the United States Constitution and the Colorado Constitution, and also violated the protections enumerated in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Assuming without deciding that plaintiff's claim is properly before us, if not under C.R.C.P. 106, then as a separate constitutional claim, we disagree with inmate's contention.

■ The United States Supreme Court has recognized that a prison inmate's interest in visitation is not guaranteed directly by the Due Process Clause. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *see Green v. Nadeau*, 70 P.3d 574 (Colo.App.2003). Nevertheless, a state may create a protected liberty interest in visitation by placing substantive limitations on the exercise of official discretion. *See Kentucky Dep't of Corr. v. Thompson, supra.*

Here, the applicable DOC regulation states:

IV. Procedures

(A)(1). [The] offender visiting policy recognizes offender social visiting as a privilege to be approved, denied, suspended, or revoked by the administrative head of the facility to which the offender is assigned.

. . . .

(K)(10). Possession and/or use of illegal drugs constitutes a serious threat to the security of all correctional facilities[.] Accordingly, upon verified possession or use of illegal drugs or participation in drug-related activities ... forfeiture of the offender's social visiting privileges shall ... be imposed.

Admin. Reg. 300–01, § IV(A)(1), (K)(10). Under this subsection, once it has been established that an inmate has sustained a drug-related disciplinary conviction, suspension of visiting privileges is mandated, and no right to notice or hearing is provided.

Here, the trial court rejected inmate's procedural due process contention, noting that his three-year suspension was mandated because he had three prior drug-related COPD convictions. The court further found that inmate had an opportunity for an administra-

tive hearing when he was charged with the COPD offenses, which satisfied his procedural due process rights under *Wolff v. McDonnell.* He could not challenge those offenses again when the warden sought to suspend his visitation privileges.

Second, the trial court noted that Admin. Reg. 300–01 gives the warden "almost complete discretion to curtail any prisoner's visiting privileges," and to that extent, the regulation does not afford inmate a procedural due process right. *See Kentucky Dep't of Corr. v. Thompson, supra.* We agree with the trial court's reasoning.

To the extent inmate's contention may be based on substantive due process, it is unavailing.

In *Overton v. Bazzetta*, 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003), the Supreme Court upheld against a substantive due process challenge the constitutionality of a regulation substantially similar to the one at issue here, stating:

[T]he restriction on visitation for inmates with two substance-abuse violations, a bar which may be removed after two years, serves the legitimate goal of deterring the use of drugs and alcohol within the prisons. Drug smuggling and drug use in prison are intractable problems. Withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose.

*Overton*, supra, 539 U.S. at 134, 123 S.Ct. at 2168–69 (citations omitted). While noting the strictness of the regulation, the Court recognized that a different conclusion might be warranted if a regulation permanently banned all visitation for certain inmates.

■ Internal prison security is one of the most important penological goals. To achieve this goal, prisons are justified when they withdraw or limit many of an inmate's privileges and rights. However, "limitations [on] visitation may be imposed only if they are necessary to meet legitimate penological objectives, such as rehabilitation and the maintenance of security and order." *Lynott*

*v. Henderson,* 610 F.2d 340, 342–43 (5th Cir. 1980) (holding that barring a certain individual from visiting inmate was necessary for orderly running of prison and inmate's rehabilitation); *see Overton, supra.*

Over the course of his incarceration, inmate was convicted of three separate offenses relating to the possession of drugs or drug paraphernalia. The regulations state that drugs and drug-related activities pose a threat to the security of correctional institutions statewide. Therefore, the suspension of inmate's visiting privileges in an effort to keep drugs out of the prison system could properly be deemed necessary to ensure internal prison security.

We conclude that, where, as here, the suspension of an inmate's visitation privileges has been shown to be imposed to meet legitimate penological objectives, and has not been shown to be discriminatorily or irrationally applied, suspension of those privileges does not amount to deprivation of due process. *Overton, supra; Lynott, supra.* As a result, we conclude that inmate's due process rights were not violated when his visitation privileges were suspended without a hearing.

## IV.

■ Inmate claims that the suspension of his visitation privileges violates COPD § IV(E)(3)(p)(5), which provides that punitive segregation and loss of privileges shall not be used together as a single sanction, and also violates constitutional protections against double jeopardy. We are not persuaded.

DOC Admin. Reg. 300–01, § IV(K)(10) states that "[p]ossession and/or use of illegal drugs constitutes a serious threat to the security of all correctional facilities or offices, requiring that all efforts be employed to preclude entry and/or use of illegal drugs within a correctional facility or DOC office." To accomplish this goal, the regulation requires that, "upon verified possession or use of illegal drugs or participation in drug related activities ... forfeiture of the offender's social visiting privileges shall, at a minimum, be imposed as follows: (c) Third conviction: Three years suspension." DOC Admin. Reg. 300–01, § IV(K). DOC Admin. Reg. 150–01,

§ IV(E)(3)(p)(6) states that loss of privileges, if used as a sanction, must be set forth in the written decision of the hearing board.

Here, the loss of inmate's visitation privileges was imposed separately from the punishments imposed by the hearing board for his convictions, and was done in an effort to keep illegal drugs out of the prison. Thus the loss of privileges was not imposed as a sanction.

While the suspension of visitation privileges may carry the "sting of punishment" for the inmate, we conclude the suspension of inmate's visitation privileges as a result of his three prior COPD drug-related convictions was not an additional punishment in violation of the DOC Administrative Regulations or the Double Jeopardy Clause, but rather was a remedial civil sanction. *See Deutschendorf v. People,* 920 P.2d 53 (Colo.1996) (quoting *United States v. Halper,* 490 U.S. 435, 447 n. 7, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989))(government may subject an individual to both criminal and remedial civil sanctions with respect to the same conduct without violating Double Jeopardy Clause); *see also Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (revocation of a privilege voluntarily granted does not constitute punishment for criminal conduct); *Lucero v. Gunter,* 17 F.3d 1347 (10th Cir. 1994) (prison disciplinary proceedings are not part of criminal prosecution and do not implicate double jeopardy concerns, as Double Jeopardy Clause is limited to proceedings that are essentially criminal); *Robinson v. State,* 116 Md.App. 1, 695 A.2d 198, 201 (Spec.1997) (noting decisions of federal and state courts holding that prison administration sanctions may be imposed in addition to criminal prosecution without violating Double Jeopardy Clause).

## V.

Finally, inmate contends that defendants did not follow the procedures of DOC Admin. Reg. 600–02 in changing his classification to administrative segregation. We disagree.

■ The decision to place an inmate in administrative segregation is a quasi-judicial action reviewable under C.R.C.P. 106(a)(4).

*Baldauf v. Roberts,* 37 P.3d 483 (Colo.App. 2001). We review decisions to place an inmate in administrative segregation for abuse of discretion and uphold such decisions if there is some support in the record. *See* C.R.C.P. 106(a)(4); *Kodama,* 786 P.2d at 420; *Baldauf, supra.* "The scope of judicial review in this type of case is very limited." *Thomas v. Colo. Dep't of Corr.,* 117 P.3d 7, 10 (Colo.App.2004) (quoting *Kodama, supra,* 786 P.2d at 420).

DOC Admin. Reg. 600–02 requires the following procedures when placing an inmate in administrative segregation:

> (IV)(A): All factors and evidence relied upon to recommend administrative segregation must be clearly documented in the "Notice for Administrative Segregation."

> (F)(1): The initiating employee shall complete a "Notice for Administrative Segregation" setting forth the facts relied upon and reason(s) why the offender should be considered for placement into administrative segregation.

> (2): The "Notice for Administrative Segregation" shall include, insofar as practicable, the place, date, and time of the conduct or situation which forms the factual basis of the "Notice for Administrative Segregation."

### A.

Inmate contends that the Notice he received was not complete because it did not include the place, date, and time of the conduct forming the factual basis of the Notice. He argues that because each event was not specifically detailed, he was unable to present an effective defense and his due process rights were violated. We are not persuaded.

The Notice received by inmate stated:

> Inmate Buenabenta ... has been involved in the introduction and use of dangerous drugs at Fremont Correctional Facility (FCF). This is corroborated by his COPD convictions for possession of drug paraphernalia.

> Additionally, inmate Buenabenta has demonstrated a total disregard for the rules and regulations of the Department. This behavior has resulted in COPD convictions for disobeying orders, threats, and verbal abuse. This behavior presents a serious threat to the security of a general population facility. A request for a review of classification and facility assignment is requested.

DOC Admin. Reg. 600–02 states that the "Notice for Administration Segregation" shall include, *insofar as practicable,* the place, date, and time of the conduct or situation which forms the factual basis of that notice. DOC Admin. Reg. 600–02, § IV(F)(2). The reference in the Notice to inmate's prior convictions was sufficient to apprise him of the conduct alleged to merit administrative segregation. Therefore, the Notice did not violate inmate's due process rights.

### B.

Inmate next contends that no substantial evidence was presented at his administrative segregation hearing to support the allegations that (1) he used and introduced dangerous drugs into the facility; and (2) he disobeyed orders, made threats, and engaged in verbal abuse. Because we conclude that there was some evidence to support inmate's placement into administrative segregation, wholly aside from these disputed allegations, we reject inmate's contention.

DOC Admin. Reg. 600–02, § IV(I)(1) states, "The facility shall have the burden of proof to show that the offender should be or continue to be placed in administrative segregation. The standard of proof used in the administrative segregation process shall be that of *substantial* evidence." DOC Admin. Reg. 600–02, § IV(I)(1) (emphasis in original). "[Substantial evidence is] such evidence that a reasonable mind might accept as adequate to support a conclusion. It is that quality of evidence necessary for a court to affirm a decision of an administrative board." DOC Admin. Reg. 600–02, § III(N). Thus, we will uphold prison administrative segregation determinations if some evidence in the record supports the DOC's conclusion. *Kodama, supra,* 786 P.2d at 420; *Thomas, supra,* 117 P.3d at 10.

The purpose of the administrative segregation regulation is to provide criteria and guidelines for segregating high-security risk offenders from the general prison population. DOC Admin. Reg. 600–02, § II. It is not a punitive or disciplinary tool; rather it is designed to be used as a preventive and management assignment process. DOC Admin. Reg. 600–02, § II.

The written classification summary of inmate's administrative segregation hearing states that the evidence relied upon to place him in administrative segregation consisted of the Notice; inmate's inmate working file; and the following findings of fact:

Inmate Buenabenta has an institutional history of involvement in possession of drugs, drug paraphernalia, and a general disregard for established rules and regulations. This has resulted in COPD convictions for theft, tattooing, sexual misconduct, fighting, assault, disobeying lawful orders, possession or use of dangerous drugs, and possession of drug paraphernalia.

It is undisputed that inmate was convicted of the offenses enumerated in the Notice and findings of fact. Thus, we conclude that the decision to place inmate into administrative segregation is supported by some evidence in the record, see *Kodama, supra,* and that the disciplinary board did not abuse its discretion. In light of our conclusion, we need not address inmate's contention that other allegations were not supported by substantial evidence.

Judgment affirmed.

Judge TAUBMAN and Judge VOGT concur.