24CA1963 Peavey v ICAO 05-29-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1963
Industrial Claim Appeals Office of the State of Colorado
DD No. 16316-2024

Linda Peavey,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Summit County
Government,

Respondents.

ORDER AFFIRMED

Division VI
Opinion by JUDGE KUHN
Welling and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

Linda Peavey, Pro Se

No Appearance for Respondent Industrial Claim Appeals Office

Jeffrey L. Huntley, County Attorney, Toby Weiner, Assistant County Attorney,
Breckenridge, Colorado; Dagner Schluter Werber LLC, Leslie L. Schluter,
Greenwood Village, Colorado, for Respondent Summit County Government

¶ 1    Linda Peavey appeals the denial of her application for unemployment benefits.  We affirm.

## I.    Background

¶ 2    Peavey worked for Summit County as a human resources director from January 2023 until May 2024 when she was terminated from her job.  Peavey's termination pertained to a paid leave policy (PPFML program) she put into effect in January 2024 without receiving approval from the Summit County Board of County Commissioners (BOCC).  Although the BOCC approved the program on February 13, 2024, the BOCC then repealed the program two weeks later.  Because Peavey had already begun granting leave under the PPFML program without receiving BOCC approval, her supervisor, Andy Atencio, sent an email to all employees that the launch of certain policies, including the PPFML program, would be postponed.  Atencio then attempted to work with Peavey and the county attorneys to replace or revise the policies.

¶ 3    On April 24, Peavey sent emails to five employees who had been granted leave under the PPFML program and informed them that their leave had been canceled.  She copied Atencio, the county manager, the finance director, and the county attorneys on these

emails.  When Atencio received the first three emails, he told Peavey to stop sending the emails.  But Peavey subsequently notified the other two employees that their leave had been canceled as well.  Roughly two weeks later, Summit County discharged Peavey because "without direction" she "canceled pending applications [under the PPFML program] and sen[t] notice to pending applicants of the same."

¶ 4　　Peavey applied for unemployment benefits, and a deputy for the Division of Unemployment Insurance denied her application under section 8-73-108(5)(e)(VI), C.R.S. 2024.  That provision states that an employer is not liable for benefits when an employee is terminated for insubordination, which includes the "[d]eliberate disobedience of a reasonable instruction of an employer." *Id.*  The deputy determined that Peavey "intentionally did not follow direct orders from leadership regarding a new policy and sent an email telling applicants that it had been canceled rather than holding off from further emails as requested."

¶ 5　　Peavey appealed the deputy's decision and requested a hearing.  After an evidentiary hearing, the hearing officer affirmed the denial of benefits and added that section 8-73-108(5)(e)(XIV)

2

also barred Peavey's request for benefits. Under that provision, an employer is not liable for benefits if an employee is terminated for "[r]udeness, insolence, or offensive behavior of the worker not reasonably to be countenanced by a customer, supervisor, or fellow worker." *Id.* The Industrial Claim Appeals Office (Panel) affirmed the hearing officer's decision.

## II. Analysis

¶ 6 Representing herself in this appeal, Peavey maintains, as she did at the hearing, that she was merely following orders from Atencio to send the emails advising employees that the PPFML program was canceled. She asserts that all the emails were "polite and cordial" and not rude or offensive. However, she admits that Atencio asked her to stop sending the emails before she sent the final two emails.

¶ 7 As we understand it, Peavey urges us to set aside the Panel's order because (1) her counsel didn't adequately represent her during the appeal to the Panel; (2) the hearing officer violated her due process rights; and (3) the hearing officer's decision was not supported by the evidence.

¶ 8 After a thorough review of the record, we conclude that substantial evidence supported the decision that Peavey deliberately disobeyed reasonable instructions, acted insubordinately, and was therefore disqualified from receiving unemployment benefits. Accordingly, we reject each of her contentions and affirm the Panel's order.

### A. Legal Principles and Standard of Review

¶ 9 Workers can receive unemployment benefits only if unemployed through no fault of their own. *See Debalco Enters., Inc. v. Indus. Claim Appeals Off.*, 32 P.3d 621, 623 (Colo. App. 2001). Determining whether a claimant is at fault for an employment separation requires a case-specific consideration of the totality of the circumstances. *Morris v. City & Cnty. of Denver*, 843 P.2d 76, 79 (Colo. App. 1992). We will uphold the Panel's decision unless the findings of fact do not support the decision or the decision is erroneous as a matter of law. § 8-74-107(6)(c)-(d), C.R.S. 2024; *see Mesa Cnty. Pub. Libr. Dist. v. Indus. Claim Appeals Off.*, 2017 CO 78, ¶ 17.

¶ 10 An employee may be disqualified from receiving unemployment benefits for multiple reasons. *See* § 8-73-108(5)(e) ("[I]f a separation

from employment occurs for any of the [reasons listed in section 8-73-108(5)(e)(I)-(XXIV)], the employer . . . must not be charged for benefits which are attributable to such employment.").

¶ 11 Because Peavey appears pro se, "we liberally construe [her] filings while applying the same law and procedural rules applicable to a party represented by counsel." *Gandy v. Williams*, 2019 COA 118, ¶ 8. Accordingly, we seek to effectuate the substance, rather than the form, of her briefing. *People v. Cali*, 2020 CO 20, ¶ 34. We will not, however, rewrite her arguments or act as an advocate on her behalf. *Johnson v. McGrath*, 2024 COA 5, ¶ 10.

## B. Attorney Error

¶ 12 Peavey contends that the attorney who represented her during the appeal to the Panel erred in a number of ways, primarily by omitting from her brief the argument that her due process rights had been violated during the hearing. She contends that "[a]ttorney error can be claimed as a basis for appeal in a benefits case" if the error was "significant enough to have substantially impacted the outcome of the initial decision and resulted in denial of benefits that would have otherwise been granted when the attorney error falls below a reasonable standard of legal practice." But Peavey

points us to no legal authority that supports this argument, and the general rule in civil cases is that ineffective assistance of counsel is not a basis for appeal or retrial in an unemployment benefits case. *See, e.g.*, *Nelson v. Boeing Co.*, 446 F.3d 1118, 1120 (10th Cir. 2006) (recognizing that "the only context in which courts have recognized a constitutional right to effective assistance of counsel in [federal] civil litigation is in immigration cases."); *see also* § 8-74-107(6) (listing the specific grounds on which the Panel's order maybe be set aside). *C.f. A.R. v. D.R.*, 2020 CO 10, ¶ 47 (recognizing that the statutory right to counsel in dependency and neglect cases includes the right to effective assistance of counsel). Accordingly, Peavey does not articulate a cognizable basis upon which we may disturb the Panel's determination.

### C. Peavey's Due Process Claim Fails

¶ 13 Even if Peavey's due process argument had been included in her appeal to the Panel, it would have failed on the merits. In this appeal, Peavey contends her rights to due process were violated during the hearing because the hearing officer (1) gave Summit County more time than her to present testimony; (2) did not allow her to testify regarding all of her exhibits; and (3) did not inform her

6

that she could request a continuance. But our review of the hearing transcript shows that she had a full and fair opportunity to present evidence, cross-examine witnesses, give rebuttal testimony, and make final statements.

¶ 14 Peavey takes issue with the number of pages of transcript dedicated to her employer's testimony versus her testimony. But we note that, when it was Peavey's turn to testify, the hearing officer asked her, "So, Ms. Peavey, what happened here?" Peavey then testified, uninterrupted, for five full pages of the transcript. While she claims she did not have a sufficient opportunity to cross-examine witnesses, the hearing officer asked her twice if she wanted to cross-examine particular witnesses, but she declined. Additionally, while Peavey did not testify as to all her exhibits, it does appear that her exhibits were included in the record, which was confirmed when she emailed the Panel to verify that fact.

¶ 15 Contrary to Peavey's contentions, while the hearing officer must oversee development of the record at the hearing, the hearing officer has no duty to examine a claimant "exhaustively" or "develop the record concerning [the claimant's] version of the events and reasons surrounding [the] separation." *See Wafford v. Indus. Claim*

*Appeals Off.*, 907 P.2d 741, 743 (Colo. App. 1995). Likewise, the hearing officer is not required to address specific evidence or testimony they do not find persuasive. *Tilley v. Indus. Claim Appeals Off.*, 924 P.2d 1173, 1177 (Colo. App. 1996).

¶ 16    Rather, because fundamental fairness is the essence of due process in unemployment compensation proceedings, the hearing officer must afford the claimant an opportunity to develop fully and fairly their own record. *Wafford*, 907 P.2d at 743-44. Accordingly, "for the due process and fair hearing standards to be met in these hearings, each party must be apprised of the evidence submitted or to be considered, and must be given opportunity to inspect documents, to cross-examine witnesses, and to offer evidence in explanation or rebuttal." *Id.* Given all of the foregoing, it appears Peavey had that opportunity. Thus, we are not persuaded that any due process violation occurred here.

D.    Substantial Evidence Supports the Decision

¶ 17    Peavey argues that the hearing officer's decision is not supported by the record. The Panel rejected that argument, as do we. The record contains ample evidence, albeit some of it disputed,

to support the hearing officer's conclusion that Peavey's actions were insubordinate.

¶ 18     For starters, multiple documents show that Peavey was instructed on numerous occasions that new policies needed BOCC approval, but that she ignored those instructions.  Indeed, the record shows that Peavey was aware of the requirement to get BOCC approval before implementing the PPFML program, because in March 2023, she changed an employee probationary policy without receiving BOCC approval.  She was counseled about the correct process for making changes at that time.  Then in August 2023, an additional issue arose when Peavey incorrectly believed that sufficient approval had been given at work sessions for policy changes, when in fact BOCC approval was required.  At that time, one of the county attorneys wrote to her:

> We should . . . absolutely be operating under the existing guidelines.  Only when new guidelines are formally approved by the BOCC do we stop operating under the existing ones.  So things like appeals to the personnel board are absolutely still in practice and are a right of employees.

Further, an email in December 2023 from a different county attorney advised Peavey in writing of a nine-step process that policy

changes had to go through. The attorney reiterated to Peavey that policy changes that were implemented without the formal process still needed to go to the BOCC for formal approval, and that only if they are approved should they become operational.

¶ 19    Despite these instructions, Peavey continued to proceed as though certain policies, including the PPFML program, did not need BOCC approval. Then in April 2024, by her own admission, she determined that she should email employees and "copy the people that were involved in the repeal of the PPFML, so they could see firsthand the impact of the decision that was made." One of the county attorneys, Toby Weiner, testified that Peavey's emails "caused a lot of confusion and disruption among the employees. And also it seemed to have been done with the intent of causing such disruption."

¶ 20    Further, during the time Peavey was sending the emails, her direct supervisor, Atencio, told her to stop. She admitted as much during the hearing, although she disputed whether he did so by email or phone. Despite that directive, however, she still sent the remaining emails.

¶ 21 The evidence substantially supported the determination that Peavey acted insubordinately when she deliberately disobeyed her employer's reasonable instructions. An objective standard is used to determine whether the instruction was reasonable. *Rose Med. Ctr. Hosp. Ass'n v. Indus. Claim Appeals Off.*, 757 P.2d 1173, 1174 (Colo. App. 1988). We conclude that a reasonable person would have obeyed the instructions to (1) not implement a policy without BOCC approval and (2) refrain from emailing employees about the policy, which had been repealed, until the new policies were communicated. And the record amply supports the conclusion that Peavey deliberately sent the emails to pressure decisionmakers about the program that she had instituted without BOCC approval. Her actions were clearly volitional. *See Starr v. Indus. Claim Appeals Off.*, 224 P.3d 1056, 1065-66 (Colo. App. 2009) (Unlike an act that is "essentially involuntary" or "accidental," a claimant's act made with volition can show the claimant's mens rea in an unemployment benefits case) (citation omitted).

¶ 22 The hearing officer ultimately determined that Peavey's actions were insubordinate, as well as rude and offensive. A hearing officer may consider any disqualification subsection she finds appropriate.

*See Mountain States Tel. & Tel. Co. v. Indus. Comm'n,* 697 P.2d 418, 420 (Colo. App. 1985) (the hearing officer has broad discretion in applying statutory subsections). "[I]f the evidence arguably might support the application of more than one section of the Employment Security Act, . . . the Panel has wide discretion in determining which section it will apply." *Sch. Dist. No. 1 v. Fredrickson,* 812 P.2d 723, 725 (Colo. App. 1991). Because we conclude that substantial evidence supports Peavey's disqualification under section 8-73-108(5)(e)(VI), we need not consider whether she was additionally disqualified under section 8-73-108(5)(e)(XIV).

### III.    Disposition

¶ 23    The Panel's order is affirmed.

JUDGE WELLING and JUDGE SCHUTZ concur.